CIANCIOLA, LLP, Plaintiff-Respondent,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,
Defendant-Appellant.†

Court of Appeals

*No. 2010AP87. Submitted on briefs October 6, 2010.
—Decided February 1, 2011.*

2011 WI App 35

(Also reported in 796 N.W.2d 806.)

† Petition for review filed.

740

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. McCabe, James H. Petersen* and *Katherine E. Lazarski* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brent D. Nistler* and *Michael F. Tuchalski* of *Nistler Law Office*, S.C. of Brookfield.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. The Milwaukee Metropolitan Sewerage District ("MMSD") appeals from a judgment awarding damages to Cianciola, LLP ("Cianciola") caused by the operation and maintenance of a deep tunnel that runs under Cianciola's property. MMSD also appeals from an order of the trial court denying its motion for reconsideration. We affirm.[1]

---

[1] A bench trial was held before the Honorable Elsa Lamelas from July 6, 2009 through July 10, 2009. Due to judicial

## BACKGROUND

¶ 2. Cianciola, created on June 5, 1996, by Frank and Shirley Cianciola, is a limited liability partnership. Cianciola has owned the land and property located at 107 E. Lincoln Ave., Milwaukee, Wisconsin ("Lincoln property"), since 1996, when it acquired the land, along with all of the rights and benefits that run with the land, from Pre-Pac Produce Distributors, Inc. ("Pre-Pac"). Pre-Pac was owned by one or more members of the Cianciola family and is Cianciola's tenant. Frank was identified as the managing partner of Cianciola, a position he held until his death in 2000. His son, Thomas Cianciola, is the current managing partner of Cianciola and the president of Pre-Pac.

¶ 3. Although Cianciola was formed in 1996, Frank[2] had owned the Lincoln property for approximately three decades prior to Cianciola's formation. Frank was approached by MMSD in 1988 to negotiate an easement to install a tunnel underneath the Lincoln property.[3] The parties executed an easement agreement on June 2, 1988. As a part of the agreement, MMSD covenanted to:

rotations, the Honorable Timothy Witkowiak denied MMSD's motion for reconsideration on November 25, 2009.

[2] Because the easement agreement was made before Cianciola was formed, we address Frank and Thomas Cianciola by their first names when referring to individual dealings with MMSD.

[3] Pursuant to orders to comply with the federal Clean Water Act, MMSD constructed The Kinnickinnic/Lake Michigan tunnel, known as the "Deep Tunnel." MMSD excavated these tunnels through bedrock approximately 300 feet below ground to allow MMSD to capture wet weather flows and reduce discharge of polluted waste and storm waters into Lake Michigan and area rivers.

> [C]onstruct and maintain said intercepting sewer in
> good order and condition and that, in and during the
> construction of said intercepting sewer and thereafter
> in and about its operation, maintenance, repair or
> reconstruction, will indemnify and save harmless the
> party of first part, its successors and assigns, from all
> loss or injury to its property and persons due to such
> construction, operation, maintenance, repair or recon-
> struction.

Cianciola is a successor to the grantor of the easement.

¶ 4. Following the creation and execution of the easement, in 1989, MMSD began construction of the tunnel system. MMSD's construction led to soil compression under the Lincoln property and to a differential settlement of the property. Specifically, the trial court found:

> MMSD's mining activities caused greater than expected
> inflows of ground water into the construction site
> which in turn caused soil compression. While this
> initial groundwater was pumped from the work site,
> the drop shaft and work chamber were flooded to
> stabilize the groundwater levels, and recharge wells
> were installed, the soil compression caused by the
> initial flooding led to differential settlement of [the
> Lincoln property] and caused damage to [the Lincoln
> property.]

¶ 5. Frank contacted MMSD in June 1991 to complain that the tunnel construction had adversely affected his building. MMSD engineer Steven Hunt met with Frank on June 20, 1991 and on June 25, 1991, and directed MMSD crews to establish a network of surveying pins and crack monitors around the Lincoln property. Based upon the data collected from the surveying tools, MMSD's consulting engineers recommended that MMSD pay Frank for any damage to the building that

744

had been caused by the construction. Consulting engineers advised Frank to retain an engineer, at MMSD's expense, to repair the damages. Frank retained MSI General Corporation and the repair work was completed in late 1993. MMSD paid Frank a total of $63,641.93 for the engineering costs, with $18,224.00 constituting a final payment by MMSD to Frank, made pursuant to a release signed by Frank. At the time of the payments, Frank was assured by Hunt that the settlements would not worsen.

¶ 6. Although Frank was told that his building would no longer settle, in 1992 a consultant suggested to MMSD that because of continuing damage that the property across the street from the Lincoln property was incurring, MMSD should completely line the tunnel in the area of the Lincoln property. MMSD declined to follow this suggestion. As a result, the Lincoln property still continues to settle.

¶ 7. Cianciola commenced this action on June 4, 2007 for damages resulting from MMSD's breach of contract, pursuant to the easement, for failure to maintain the tunnel in good order and condition and for MMSD's failure to indemnify Cianciola.[4] During a bench trial, Cianciola called Richard Stehly, an engineer with American Engineering Testing, to testify as to the cause of the damages to the Lincoln property as well as to the necessary repairs. Stehly testified that considerable leakage continues to occur in the Deep Tunnel, and that at the time of the tunnel's construction, small flows in the area of the property resulted in unexpectedly large changes in water elevation. Stehly also testified

[4] Cianciola's complaint originally alleged five causes of action. Only the breach of contract claims and the resulting damages are at issue in this appeal.

745

that if MMSD had raised the water levels up to preconstruction levels in 1993, there would have been some settlement, but not enough to cause a need for major repair. The trial court found Stehly's testimony credible.

¶ 8.   The trial court also found that the daily water inflow into the Deep Tunnel System is approximately 2.8 million gallons. Approximately 4,320 gallons of water enter the tunnel per day from Cianciola's property.

¶ 9.   Cianciola also called Steve Jaques, an expert in deep foundation construction, and Lavern Nall, a structural engineer consultant, to testify as to the damages and necessary repairs to the Lincoln property. Both witnesses indicated that major structural repairs to the property are necessary. Based on the testimony of expert witnesses, the trial court found that repairs to the foundation of the Lincoln property would cost approximately $443,670 and repairs made necessary as a result of continuing settlement would cost $592,644. The total amount of damages awarded by the trial court was $1,083,282.74.

¶ 10.   Following the bench trial, the trial court issued written findings of fact and conclusions of law. MMSD filed a motion for reconsideration with the trial court, which was denied. MMSD now appeals.

## DISCUSSION

¶ 11.   MMSD bases its appeal on three grounds:   (1) Cianciola's claims are barred by the statute of repose; (2) Cianciola's claims are barred by the statute of limitations; and (3) the trial court erroneously exercised its discretion in its award of damages. We address each argument in turn.

## I.  Standard of Review.

██ ¶ 12.  Following a bench trial, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Wis. Stat. § 805.17(2). We will therefore not upset a trial court's findings of fact unless they are clearly erroneous, nor will we reweigh evidence or assess witness credibility. *Dickman v. Vollmer*, 2007 WI App 141, ¶ 14, 303 Wis. 2d 241, 736 N.W.2d 202. "Findings of fact made by the trial court with regard to damages will not be upset by us unless clearly erroneous." *Three & One Co. v. Geilfuss*, 178 Wis. 2d 400, 410, 504 N.W.2d 393 (Ct. App. 1993).

## II.  The Statute of Repose.

¶ 13.  MMSD argues that the statute of repose bars Cianciola's claims because the tunnel is an improvement to real property, thereby falling under the protection of Wis. Stat. § 893.89 (2007–08),[5] which limits claims pertaining to real property improvements to a ten-year "exposure period." This exposure period ended, according to MMSD, on January 1, 2007, approximately five months prior to the filing of Cianciola's lawsuit. Although the tunnel was put into service on January 1, 1994, MMSD contends that the end of the exposure period was January 1, 2007 because Thomas testified that the property damage occurred during the eighth to tenth years following construction, thereby

[5] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

extending the exposure period by three years. *See* § 893.89(2)(b). Cianciola filed suit on June 4, 2007.

■

¶ 14.  Whether the statute of repose bars a claim is a question of law that we review independently. *Tensfeldt v. Haberman*, 2009 WI 77, ¶ 97, 319 Wis. 2d 329, 768 N.W.2d 641. WISCONSIN STAT. § 893.89, while generally limiting the exposure period for damages resulting from an improvement to real property to ten years, also provides exceptions to the general rule. The statute provides in relevant part:

> **893.89 Action for injury resulting from improvements to real property. (1)** In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
>
> **(2)** Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period.
>
> . . . .
>
> **(4)** This section does not apply to any of the following:
>
> . . . .
>
> (b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.

■

¶ 15.  We conclude that the claims are not barred because of the express warranty exception provided by WIS. STAT. § 893.89(4)(b).

748

¶ 16.   Both parties rely on our supreme court's recent decision in *Hocking v. City of Dodgeville*, 2010 WI 59, 326 Wis. 2d 155, 785 N.W.2d 398. In *Hocking*, landowners brought suit against the City of Dodgeville for damages to their property, alleging that the City "was negligent in the design, plotting, approval, and development of a subdivision adjacent to their property and that [the] negligence caused significant water damage to their property." *Id.*, ¶ 1. The specific issue before the court was whether city officials' representations to the landowners that measures would be taken to resolve the numerous issues caused by the new subdivision constituted an express warranty for statute of repose purposes. *Id.*, ¶¶ 2–3, 8–11. The property that became the subdivision at issue was purchased in 1989. *Id.*, ¶ 6. Beginning in the early 1990s, for a period of approximately ten years, the landowners spoke with elected officials regarding the damage the construction of the new subdivision was causing to their property. *Id.*, ¶¶ 6, 11. The landowners filed suit against the City in 2006, arguing that their claims were not barred by the statute of repose because of express guarantees obtained by city officials. *Id.*, ¶¶ 12–13. The court disagreed, holding that the statute of repose barred the landowners' claims because there was no evidence of a contractual relationship between the landowners and the City and any representations made did not come from representatives authorized to bind the City. *Id.*, ¶ 27.

¶ 17.   Here, the language of the easement establishes a contractual relationship between Cianciola and MMSD. The easement expressly states that MMSD "covenants and agrees . . . that it will construct and maintain said intercepting sewer in good order and condition" and will "indemnify and save harmless [Cian-

749

ciola] . . . from all loss or injury to its property and persons due to such construction, operation, maintenance, repair and reconstruction." Our supreme court in *Hocking* concluded that while the meaning of the term "warranty" varies by context, a warranty is generally defined as " 'an assurance by one party to a contract of the existence of a fact upon which the other party may rely.' " *Id.*, ¶ 28 (citation omitted). The court further held that

> In the context of § 893.89(4)(b), the express warranty or guarantee is clearly referring to an assurance of quality by the one designing or constructing the improvement, likely for a defined period of time. Hence, the statute allows an express warranty or guarantee to outlive the statute of repose 'for the period of that warranty or guarantee.' Such an express warranty or guarantee is not present here.

*Id.*, ¶ 33 (citation omitted). The easement agreement between Cianciola and MMSD constitutes a warranty as explained in *Hocking*. Therefore, Cianciola's claims are not barred by WIS. STAT. § 893.89.

### III.   The Statute of Limitations.

¶ 18.   MMSD argues that the trial court erred in determining that the six-year statute of limitations on Cianciola's breach of contract claim had not run.[6] According to MMSD, Cianciola's claim for breach of the "good order and condition" clause stems from the existence of the tunnel, therefore a determination of whether the tunnel was built in good order and condition should have been determined prior to January 1,

---

[6] WISCONSIN STAT. § 893.43 provides a six-year statute of limitations for actions on contract claims.

1994, when the tunnel was put into service. The trial court determined that MMSD continues to breach the warranty in its contract every day that it does not maintain the tunnel in good order and condition.

■■

¶ 19.   Whether the statute of limitations has run on Cianciola's claim is a question of law that we review *de novo*. *See State v. Slaughter*, 200 Wis. 2d 190, 196, 546 N.W.2d 490 (Ct. App. 1996). The statute of limitations in this matter is triggered by the "good order and condition" clause in which MMSD promises to "construct *and maintain* said intercepting sewer in good order and condition," and that MMSD will hold Cianciola harmless from all loss or injury "due to . . . construction, *operation, maintenance,* repair, or reconstruction." (Emphasis added.) Therefore, the contract is breached in each instance that damage is caused because MMSD does not maintain the tunnel in good order and condition. The statute of limitations does not expire on Cianciola's breach of contract claims so long as the tunnel is not maintained as required by the warranty in MMSD's contract with Cianciola.

## IV. The Trial Court Properly Exercised its Discretion in its Award of Damages.

¶ 20.   MMSD argues that the trial court erroneously exercised its discretion when it failed to base its damages award on diminished property value, but rather based the award on cost of repair. Because MMSD did not provide evidence of diminished property value, we conclude that the trial court did not err in awarding Cianciola the cost of repairs to its building.

██

¶ 21. If sufficient evidence supports a trial court's findings of damages, we must uphold the findings unless they are clearly erroneous. *Lundin v. Shimanski*, 124 Wis. 2d 175, 195, 368 N.W.2d 676 (1985).

██

¶ 22. Although MMSD provided evidence as to the fair market value of the property, it failed to provide evidence as to the effect of damages on the fair market value. Therefore, there is no evidence in the record as to what the diminished value of the property is. There was evidence, however, as to the cost of repairs, as presented by Cianciola's experts. The trial court accepted this evidence and found the cost of repairs to Cianciola's building to be $1,083,282.74. If MMSD "was dissatisfied with damages based on cost of repairs it might show, if such was the fact, that diminution of value was a smaller sum. The absence of such evidence does not render evidence of cost of repairs insufficient to support a finding of damage in that amount." *Engel v. Dunn Cnty.*, 273 Wis. 218, 222, 77 N.W. 408 (1956). The trial court therefore did not erroneously exercise its discretion by accepting the evidence presented by Cianciola when MMSD did not present evidence of diminution value. *See Selmer Co. v. Rinn*, 2010 WI App 106, ¶ 28, 328 Wis. 2d 263, 789 N.W.2d 621 ("We apply a highly deferential standard of review to damage awards, affirming if there is any credible evidence which under any reasonable view supports the finding."); *see also Engel*, 273 Wis. at 223 (When the only evidence presented to the trial court is the cost of repairs and the trial court awards damages based on that evidence, " '[w]e cannot say that the conclusion of the court . . . is against the clear preponderance of the evidence.' ") (citation omitted).

## CONCLUSION

¶ 23. For all the foregoing reasons, we conclude that neither the statute of repose, nor the statute of limitations barred Cianciola's claims and that the trial court did not err in awarding Cianciola damages in the amount of $1,083,282.74.

*By the Court.*—Judgment and order affirmed.