COURT OF APPEALS
DECISION
DATED AND FILED

May 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP843**

Cir. Ct. No. **2017CV1063**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

DANIEL J. FRANK AND DAPHNE FRANK,

   PLAINTIFFS-RESPONDENTS,

 V.

RANDY YAJCHARTHAO AND PHUTSON YAJCHARTHAO,

   DEFENDANTS-APPELLANTS.

            APPEAL from a judgment of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Affirmed*.

            Before Blanchard, Kloppenburg, and Graham, JJ.

            **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Daniel Frank and Daphne Frank (collectively, "the landlords") rented a single-family residence to Randy Yajcharthao and Phutson Yajcharthao (collectively, "the tenants") under a series of lease agreements that allowed the tenants to reside in the house for approximately 4-1/2 years.[1]  After the tenants and their minor children moved out, the landlords sued the tenants for breach of the agreements.  The landlords alleged that the tenants were responsible for multiple forms of damage to aspects of the rental property that were not the result of normal wear and tear.    After taking evidence at a bench trial and considering post-trial briefing, the circuit court determined that the tenants had breached the agreements by causing "substantial damages" of a "ubiquitous nature."  The court ruled that a "fair and reasonable approximation" of damages is $22,402.37, and that, after taking into account set offs in favor of the tenants, the landlords are entitled to a judgment for $17,540.53.[2]  The tenants appeal.  They primarily argue that the circuit court clearly erred in finding that various components of the $22,402.37 damages amount awarded were damages for which the tenants were responsible.  We conclude that the tenants fail to show that the court clearly erred in making the findings that underlie the damages award, and that the award is within reasonable limits when we view the evidence in the light most favorable to the landlords.  Accordingly, we affirm.

---

[1]  There are discrepancies in the record as to whether the surname of the tenants is spelled Yajcharthao (with a second "a") or instead Yajcherthao (with an "e" in place of the second "a"). We use the spelling that is at least at times used by counsel for the tenants and that appears in the caption of this case on appeal, which neither party has moved to amend.

[2]  The tenants had counterclaimed, alleging that the landlords violated an administrative code provision.  The landlords stipulated to this violation, resulting in part in the set-offs, and the tenants raise no argument on appeal about resolution of their counterclaim.

## BACKGROUND

¶2     The landlords filed the complaint to begin this action in May 2017, alleging that the tenants had breached two lease agreements by causing property damage to a leased house.[3]  The first lease term began in June 2012 and the tenants moved out in the fall of 2016.  By the time of the bench trial, in July 2018, there were four children in the tenants' family, aged 14, 13, 7, and 4.

¶3     After the tenants moved out, the landlords hired a home inspector to inspect the house for damage and a contractor to make repairs to the house, and to repair or oversee repair of various mechanical equipment, fixtures, and appliances. At trial, the landlords called as witnesses Daniel Frank and Kenneth Valdovinos, the contractor hired by the landlords to make repairs after the tenants moved out. Evidence presented by the landlords included a video recording made by Daniel Frank shortly after the tenants moved out showing aspects of the house.  The landlords also presented a report from the inspector regarding the results of his inspection, which included numerous photographs.  Contractor Valdovinos testified to damage that he characterized as "vandalism" to the house.  He also testified regarding an itemized invoice that his firm prepared listing items of repair performed at the house at the request of the landlords.  This itemized invoice was a trial exhibit, which we will refer to as "the repair invoice."  The repair invoice was

---

[3] After the second lease agreement expired, it was followed by several months of continued tenancy under a month-to-month agreement.  But neither side develops an argument that anything about the month-to-month stage of rental arrangement matters to the arguments on appeal.  In a similar vein, the two leases both included options to purchase, but again nothing about the options matters to any developed argument.  For the balance of this opinion, we ignore both the month-to-month rental stage and the options to purchase.

the major focus at trial. The repair invoice includes 3 pages of summaries of repairs that Valdovinos testified were made by his company.

¶4 The tenants called one witness, Randy Yajcharthao, who testified based on his personal observations and memory. His testimony consisted largely of acknowledging or denying that there was a need to repair various of the items at the time his family vacated the house, or that, if there was needed repair, it was due to ordinary wear and tear, typically on older features of the house.[4] Tenants' counsel essentially walked Yajcharthao through various claims of items allegedly needing repair reflected in the repair invoice. The tenants did not offer any alternative valuations for any of the alleged damage.

¶5 After the circuit court declared that the evidence was closed, the court observed that the dispute appeared to boil down to factual challenges by the tenants to various items on the repair invoice as representing damage done by the tenants. Both sides indicated agreement with this view. With that understanding, the court reserved any fact finding or rulings and set a post-trial briefing schedule to allow both sides a chance to make their factual arguments based on the evidence that had been admitted at trial. The tenants were to submit a written summary directed at the allegedly needed repairs listed on the repair invoice. They were to agree or disagree whether each claim represented damage for which the tenants were responsible under the leases. The court gave the landlords a chance to respond to those objections and concessions in writing, and the tenants had a final opportunity for a written reply.

---

[4] The house was constructed in 2005.

¶6 In a confusing approach, the first post-trial submission of the tenants, who were at all times represented by counsel, was styled as a motion and brief for summary judgment and was accompanied by an affidavit of Randy Yajcharthao and an affidavit of Nick Gromicko and exhibits, none of which had been introduced or referred to at trial. The tenants took the position that the Gromicko affidavit supported an argument that the damages listed in the repair invoice were inflated, because they did not account for expected or average diminution in the value of the property of the type at issue due to ordinary usage and the passage of time.[5] Putting to the side this confusing approach, the tenants' brief included some substantive arguments based on evidence presented at trial,

---

[5] The circuit court rejected the tenants' post-trial summary judgment motion as untimely under WIS. STAT. § 802.08(1) (2017-18) and based on the posture of the case as it had been litigated to date. The circuit court made the related ruling that it would ignore the Gromicko affidavit and exhibits because they were submitted far too late; the tenants should have submitted them as part of a pretrial report pursuant to a pretrial scheduling order.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

On appeal, the tenants attempt to rely on the Gromicko affidavit and exhibits to argue that the circuit court "committed reversible error in refusing to consider the [d]iminution in [v]alue of [p]roperties," while acknowledging that this argument depends entirely on the contents of the late filed Gromicko affidavit and exhibits. The tenants point to wording in the notice of briefing schedule issued by the court following trial, which required the parties to submit paper copies of all "e-filed briefs *and supporting affidavits*." (Emphasis added.) The tenants apparently intend to suggest that this was an invitation to submit new evidence that the circuit court thereafter unreasonably withdrew. We reject any such suggestion. The briefing schedule notice clearly used, as a stock phrase, the reference to "briefs and supporting affidavits," with the "affidavits" part being applicable in some circumstances and not others. This could not reasonably have been read to invite new evidence after the court had explicitly closed the evidentiary phase in this action and made perfectly clear what the court expected in the way of briefing, with no objection from the tenants. And, the tenants effectively concede this issue in their reply brief, providing no argument of substance in reply to the landlords' argument on this issue. The tenants ask us to consider this issue merely because the Gromicko affidavit is in the record, which ignores the history we have just explained.

Accordingly, we disregard the Gromicko affidavit and exhibits and all arguments on appeal based on them, including the diminution in value concept.

5

challenging the basis to find some aspects of alleged needed repairs. At the same time, the tenants' decision to diverge from the form and content of post-trial briefing agreed to by the parties and requested by the court presented a challenge to the circuit court in discerning clear objections by the tenants to the inclusion of various items on the repair invoice as damages attributable to the tenants.

¶7 The landlords responded with a detailed submission of the type the court requested for post-trial briefing. This included a chart detailing 45 separate items (*e.g.*, "Fix broken cabinet doors in kitchen") and indicating for each item whether, in the view of the landlords, it was admitted by the tenants, and if not, providing a response based on the landlords' view of trial evidence.

¶8 Compounding the difficulties posed by their opening brief, the tenants' reply submission made isolated points, instead of following the organized, item-by-item approach of the landlords' response.

¶9 In the challenged circuit court decision, the court accepted some arguments made by each side.[6] But in the main, the court credited testimony and evidence presented by the landlords that the tenants caused the damages that were reflected in contractor Valdovinos's repair invoice, and made the challenged rulings summarized in ¶1 above. The tenants appeal.

---

[6] The circuit court issued a 12-page written decision and order on November 20, 2018. On February 11, 2019, the court issued an Amended Order for Final Judgment, which is consistent in content with the November 20 decision, but refines the final tallies of damages and offsets. For ease of reference we will simply refer to "the challenged circuit court decision" as a collective reference to both rulings.

## DISCUSSION

¶10    We begin with a clarifying word regarding pertinent lease terms. While there were two leases covering different periods, the tenants do not attempt to distinguish between differing terms in the two leases or to suggest that the circuit court failed to appreciate a timing element that would make some alleged conduct of the tenants a violation of one lease but not the other.

¶11    In a similar vein, putting aside potential fine points that might be made in some cases to distinguish between such concepts as "damage beyond normal wear and tear" and "breach of a duty of care amounting to negligence," we follow the apparently shared view of the parties about how we should interpret pertinent terms of the applicable leases. As discussed by the parties, the following apply to all disputed conduct of the tenants: the tenants were responsible for needed repairs other than "normal wear and tear," the latter including normal needed repairs to non-mechanical items such as carpeting or painted surfaces; the landlords were responsible for normal-use repairs to mechanical equipment, but the tenants were responsible for mechanical repairs "caused by misuse or abuse by" the tenants; and the tenants were "responsible for all acts of negligence" by them or guests or invitees and "liable for any resulting property damage or injury."[7]

---

[7] The initial lease was for a 3-year term and provided in pertinent part:

> [Tenant/potential] [b]uyer & [landlord/potential] [s]eller to walk through the house prior to tenant taking possession and filling out a tenant "move-in condition sheet" signed by both parties to this transaction. [Upon move out] a "move-out condition sheet" will be completed by both tenant and landlord with consideration given for normal wear and tear over a period of three years, [for example] carpeting, paint, etc.

(continued)

¶12    Bearing in mind this shared understanding of the parties and putting aside arguments rejected elsewhere in this opinion, the tenants present what they categorize as three arguments:  (1) the landlords failed to prove that the tenants misused or abused the mechanical equipment, and the circuit court committed reversible error in awarding damages to the landlords based on the alleged misuse or abuse; (2) the landlords failed to prove that the tenants were negligent or that their negligent acts caused damage to the non-mechanical property, and the circuit court committed reversible error in awarding damages to the landlords based on the alleged negligence; and (3) the landlords "failed to meet their burden of proof on the amount of monetary damages," and the circuit court "committed reversible error in awarding damages to" the landlords.

¶13    This court has explained as follows the general standard of review that applies to challenges of bench trial rulings of circuit courts, including in particular our review of damages determinations:

> Following a bench trial, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  WIS. STAT. § 805.17(2).  We will therefore not upset a trial court's findings of fact unless they are clearly erroneous, nor will we reweigh evidence or

---

....

[Landlord-potential seller] will be responsible for all repairs to mechanical equipment, (A/C, Furnace, water softener, water heater, garbage disposal, stove, refrigerator, dishwasher, microwave, oven, washer & drier) that occur from normal use. Tenant/[potential] buyer will be responsible for said repair costs if said repairs were caused by misuse or abuse by tenant.

The second lease was for a 1-year term and provided in pertinent part that the tenants were "[t]o be responsible for all acts of negligence or breaches of this Lease by Tenant and Tenant's guests and invitees, and to be liable for any resulting property damage or injury."

> assess witness credibility. ***Dickman v. Vollmer***, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. "Findings of fact made by the trial court with regard to damages will not be upset by us unless clearly erroneous." ***Three & One Co. v. Geilfuss***, 178 Wis. 2d 400, 410, 504 N.W.2d 393 (Ct. App. 1993).

***Cianciola, LLP v. Milwaukee Metro. Sewerage Dist.***, 2011 WI App 35, ¶12, 331 Wis. 2d 740, 796 N.W.2d 806; *see also* ***Teff v. Unity Health Plans Ins. Corp.***, 2003 WI App 115, ¶41, 265 Wis. 2d 703, 666 N.W.2d 38 ("When we review a damage award in either a bench or jury trial, we do not substitute our judgment for that of the fact finder, but rather determine whether the award is within reasonable limits; and we view the evidence in the light most favorable to support the damage award.").

¶14 The last point about not substituting our judgment for that of the circuit court is significant here. In the challenged circuit court decision, the court did not break down its findings into categories of damage and make specific findings, but we may consider any evidence that supports the court's damage award. Particularly important is the repair invoice, which detailed alleged damage, gave summaries of costs of repair, and became the focus of argument at trial.

¶15 It is difficult, at least at times, for us to discern the extent to which the tenants attempt to argue, not that the court lacked an adequate evidentiary basis to award damages based on their reasonable measurement, but instead that the court failed to support findings of breaches of contract through negligence, misuse, or excessive wear and tear (*i.e.*, that particular damage was caused by a breach by tenants). The tenants certainly do not present any developed legal argument that the circuit court misconstrued the meaning of pertinent lease terms. At most, they argue that the court clearly erred in making the finding that the

tenants caused "substantial damages" because that finding applied to certain issues of alleged negligence, misuse, or excessive wear and tear.

¶16   We now make two related observations about the tenants' arguments on appeal, and a third point about the fact of unsupervised children in the rental property.  First, many of the tenants' arguments fail at a minimum because they ignore the review standards quoted above regarding the discretion of a circuit court in determining damages.  This includes both the fact that credibility determinations are the sole province of the circuit court and our obligation to "view the evidence in the light most favorable to support the damage award."

¶17   Second, the arguments tend to rely on selective summaries of relevant evidence from the trial, which is not sufficient given the standards of review.  It is not enough to suggest that some piece of evidence could have weighed against a particular ruling.  It is necessary to show clear error.  Though our discussion below does not exhaustively address each such reference, the tenants frequently point to aspects of the inspector's report or testimony of Randy Yajcharthao that could have undermined the findings or implied findings that the court ended up making, depending on how the court weighed the evidence and assessed credibility.  It was for the court to do that weighing and make those credibility determinations and it was free to give evidence pointed to by the tenants little or no weight.

¶18   Third, in the challenged circuit court decision, the court noted that, until shortly before the tenants moved out of the house, "it is unclear whether there was any adult present with the children [in the house] during business hours" of each week over the course of more than four years.  We interpret this as a finding that multiple young children were frequently, over the more than four-year

10

tenancy, given essentially free rein to do the kind of damage in the house that unsupervised children can be expected to do. The tenants do no show this to be clear error. Consistent with this, the court made the specific, striking finding that "[m]arker and crayon scribbling covered most of the walls, cabinets and counter-tops" of the house upon move out by the tenants. This finding about unsupervised children helps inform a number of our conclusions, because we are obligated to view the evidence in the light most favorable to the damages amount set by the court.

¶19     With all that as background, we now address each type of damage addressed by the tenants on appeal.[8]

*Misuse Or Abuse Of Mechanical Equipment*

¶20     **Heating and air conditioning system.** The tenants challenge inclusion of $371.32 that the landlords paid to service this system, which Daniel Frank testified was necessary because the tenants had never had any service done at all over the course of more than four years. The tenants contend that there was

---

[8] We reject two of the tenants' arguments on the following grounds, without need to address the merits.

First, the tenants argue that the circuit court improperly awarded damages for the cost of re-sealing a radon tank. However, the landlords assert that there is no basis to argue that this was a component of the damages award, and the tenants fail to reply on the issue, conceding it. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to refute proposition asserted in a response brief may be taken as a concession). We could independently reject the tenants' argument for lack of a single citation to the record.

Second, the tenants argue that the circuit court improperly awarded damages for the cost of flushing a drain tile system. However, we reject this argument as undeveloped in multiple respects. The tenants do not provide any information about what this work would have entailed, fail to explain what objection they raised on this topic in the circuit court, and do not provide a single citation to the record on this topic.

11

no invoice produced, but this is of little significance because the court was entitled to credit Frank's testimony. The tenants also suggest that there was no evidence of misuse or abuse of the system, but they fail to develop an argument that it was not a form of misuse of the system to go more than four years without service of any kind.

¶21 **Garbage disposal**. The tenants challenge counting as damages the cost of replacing the garbage disposal on the ground that the circuit court had reasons to discredit Valdovinos' testimony that the disposal was "inoperable," and because there was insufficient reason to suspect misuse or abuse. However, the court was free to credit Valdovinos and, when we view all of the evidence in the light most favorable to support the damage award, the court could have reasonably concluded that the broken garbage disposal was part of a pattern of misuse and abuse of many features of the house by the tenants, including at times by unsupervised children.

¶22 **Refrigerator**. The tenants essentially attempt to relitigate the issue of whether there was damage to the refrigerator. Consistent with an entry on the repair invoice, the court awarded to the landlords the cost of replacing the refrigerator. Problems with the tenants' arguments include the following: the tenants refer only to evidence regarding mold issues, but there was also testimony that the refrigerator was dented, and that a plastic rotating water spout piece had been "ripped out"; as to mold, Valdovinos testified that it was so bad that it was cheaper to replace the unit than to clean it; the tenants offer a flawed theory that appears to turn on the idea that, when the inspector noted that the refrigerator "[n]eeds cleaning," without using the word "mold," this obligated the circuit court

12

to find that there was no refrigerator mold problem when the tenants moved out, despite the testimony from Valdovinos.[9] The court heard all of the relevant testimony and evidence and had a chance to assess credibility. This included the testimony of Randy Yajcharthao, now highlighted by the tenants, that the refrigerator was, in the words of the questioner, "functioning properly up until [the tenants] vacated the house," which is at least ambiguous on the denting topic. The tenants do not attempt to develop an argument that denting, breaking pieces from, or allowing extensive mold to grow on a refrigerator could not constitute "misuse or abuse" of the refrigerator under the leases.

¶23    **Stove and oven**. The tenants challenge the cost of replacing the stove and oven on the grounds that there was insufficient evidence of damage, or that any damage resulted from misuse or abuse. However, the circuit court was free to credit the inspector's report that the stove and oven had been subject to "heavy neglect," with the burners "struggl[ing] to light," which was generally consistent with testimony from Valdovinos that "the stove and oven was caked in grease so thick I don't think anybody could possibly clean it off. The electronic backsplash was no longer functional. The shelving[,] which was made out of metal mind you[,] was all [d]ented and banged up. It just wasn't working."

¶24    **Washer and drier**. The tenants challenge the cost of replacing the washer and drier. Valdovinos testified that neither machine "work[ed] anymore and the dryer was full of food and other particles." The tenants make a number of

---

[9] The tenants may mean to argue that the circuit court clearly erred in failing to find that there was no mold in the refrigerator based on photographs taken by the inspector, but if so they fail to support this argument with record citations establishing that the photo evidence was conclusive in showing no mold. Accordingly, we reject the argument as unsupported.

the same types of arguments that we have already rejected, and we need not repeat those again in this context. The tenants also argue that Valdovinos disqualified himself by testifying that he is "not a specialist in appliances." However, whatever he meant by "not a specialist," his testimony did not require technical expertise in the operation of washers or driers. He simply testified that water did not properly enter the washer and the drier did not work. The tenants were free to present contrary evidence or undermine this testimony through cross examination for evaluation by the circuit court.

*Property Damage To Non-Mechanical Equipment From Negligence*

¶25    **Missing toilet parts**. Daniel Frank testified that a lid was missing from a basement toilet, and Valdovinos testified that a toilet seat was not connected to a downstairs bathroom toilet and that it was missing bolts and perhaps the seat itself. This is sufficient to justify ordering compensation for replacement of the tank and for installing a toilet seat, using the same reasoning explained above.

¶26    **Master bath sink drainage system**. Daniel Frank testified that the drainage system in the master bathroom sink had been destroyed and waste water flowed into *a plastic bag*. This is sufficient to justify ordering compensation for a replacement system, using the same reasoning explained above.

¶27    **Doorbell**. Daniel Frank testified that the doorbell "was not functional," and therefore needed to be repaired. Particularly given the range of types of damage to various other aspects of the house, the circuit court could reasonably find that the bell did not work due to negligence of the tenants, not due to the fact it was approximately 10 years old, as the tenants argue.

¶28 **Hardware on bi-fold bedroom closet doors**. Valdovinos testified that hardware that allowed bi-fold doors to operate had "pieces missing," in a manner not necessarily consistent with normal wear and tear, such as when such doors simply come off a track and have to be reinserted into the track. Again, given the range of types of damage to various other aspects of the house, the circuit court could reasonably find that this was due to negligence of the tenants and not due to normal wear and tear, as the tenants argue.

¶29 **Handle and latch on downstairs bathroom pocket door**. Valdovinos testified that a broken handle and latch did not allow the door to be secured as it should have, justifying replacement. Again, given the range of types of damage to various other aspects of the house, the circuit court could reasonably find that this was due to negligence of the tenants and not due to normal wear and tear.

¶30 **Kitchen blinds**. Daniel Frank testified that the kitchen blinds were covered in grease, "such that the strings would no longer function." It was reasonable to credit this testimony and attribute this situation to negligence by the tenants.

¶31 **Trim under microwave**. Valdovinos testified that there were missing trim pieces from the area under the microwave. Again, given the range of types of damage to various other aspects of the house, the circuit court could reasonably find that this was due to negligence of the tenants and not due to normal wear and tear.

¶32 **Various bathroom plumbing fixtures**. Valdovinos testified that bathroom fixtures in the house were corroded because "the water softener had been unplugged for an extended period of time" and (in differing testimony, but

that would lead to the same result) Daniel Frank testified that the water softener "had never been filled" with salt pellets, and as a result "a lot of the piping" in the bathrooms had been damaged. This was sufficient to attribute the need to repair various plumbing fixtures to negligence by the tenants—master bathroom sink features, new bathroom fixtures in the upstairs bathroom, and shower fixture trim kits.

¶33 **Garbage and debris in yard**. Daniel Frank testified that there was garbage and debris in both the front yard and the back yard that had to be removed. If credited, this testimony is sufficient to support this component of damages. The tenants note that Frank testified that he considered an "old play set" left in the yard to be part of the garbage that needed removal and that the repair invoice included removal of the play set as part of its entry regarding the removal of garbage from the yard. The tenants argue that the court could not use the removal of the play set as a basis for damages because the playset was originally placed on the property by the Franks before the tenants moved in, and therefore belonged to the Franks. Although the landlords appear to concede that they put the playset on the property before the tenants moved in, the tenants' argument regarding the playset is undeveloped. Specifically, the tenants do not establish the ownership of the playset under the terms of the lease, why they could not be responsible for the playset's removal regardless of ownership or its condition, nor do they contest that it was appropriate to remove the playset.

¶34 **Caulking around sinks**. Valdovinos testified that, due to a pervasive mold problem, all of the sinks in the house had to be recaulked, and by implication this required caulking the kitchen backsplash. The court was not obligated to find that this was a result of age alone, as the tenants argue, but instead the court could have credited the testimony about a mold problem and

reasonably deduced that this resulted from negligent lack of cleaning under the circumstances.

¶35    **Defective light switches**. Valdovinos testified that ordinarily, in the houses he works on, he does not discover multiple worn out or cracked switches for light fixtures, but in this case he found a high percentage, causing him to suspect negligence such as overuse.  Valdovinos said he had replaced only the truly defective switches, and made sure that it was not simply a case of a burned out light bulb.  This was a sufficient basis for the court to find that the switches needed to be replaced and were damaged through negligence of the tenants.

¶36    We turn now to the tenants' challenge to the amount of damages.  In an amorphous and unfocused argument, the tenants suggest that the circuit court lacked sufficient evidence to award damages in the amount it did.  We now address elements of this argument.  We deem undeveloped any references intended as arguments that we do not address.

¶37    The tenants point to various versions of documents Valdovinos used to account for repairs that he submitted to the landlords, representing needed work on the house.  However, the tenants speak in generalities and fail to point to a specific internal inconsistency in any document or to the lack of any specific detail that could not have been reasonably filled in by the circuit court based on all of the evidence.

¶38    The tenants briefly reference an opinion of this court involving an action by a tenant to recover a security deposit.  *See* ***Rivera v. Eisenberg***, 95 Wis. 2d 384, 290 N.W.2d 539 (Ct. App. 1980).  In ***Rivera***, we affirmed, as not against the great weight and clear preponderance of the evidence, circuit court findings that the landlord had not met his burden of proving the existence, the

amount, or the cause of alleged damage to the property. However, the facts in *Rivera* bear no resemblance to the facts here. There, the landlord "had no actual knowledge of the condition of the apartment," and "failed to testify with any specificity as to the amount and type of damages." *Id.* at 390. Here, in contrast, the combined video, photographic, observational, and invoiced-based evidence from Frank, the inspector, and Valdovinos was extensive and overlapped on many details. And, the tenants cannot get around the fact that the repair invoice contains a wealth of information that the circuit court could evaluate in arriving at a damages award with reasonable certainty, when the repair invoice was considered in the context of all other evidence, including the testimony of Randy Yajcharthao, which the court was free to discredit.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.